# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION


JENNIFER MILES,             )
                                   )

    Plaintiff,          )
                                   )

   vs.             )     Case No. 4:06CV00110MLM
                                   )

BELLEFONTAINE HABILITATION   )
CENTER,                  )
                                 )

    Defendant.       )


## MEMORANDUM OPINION

Before the court is the Motion for Summary Judgment filed by Defendant Bellefontaine

Habilitation Center ("BHC" or "Defendant"). Doc. 45. Plaintiff Jennifer Miles ("Plaintiff") filed a

Response. Doc. 51. The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 17.

## UNDISPUTED FACTS [1]

On December 29, 2004, Plaintiff was employed by BHC.[2] On or about that date, Plaintiff

overheard a co-worker address another co-worker with a racial slur. In particular, Plaintiff testified

in her deposition in regard to events of December 29, 2004:

> In the incident I was retrieving a vehicle from the garage at the Bellefontaine

---

[1]     The facts are undisputed unless otherwise stated. Plaintiff failed to respond to BHC's Statement of Undisputed Facts as required by Rule 56. Because Plaintiff is pro se, to the extent she disputed BHC's Facts in her Response, the court will give Plaintiff the benefit of the doubt and assume that those facts are disputed.

[2]     From the record Plaintiff's job title on that date is not clear. BHC's Statement of Undisputed Facts states that Plaintiff's job title on that date was Disability Assistant I. She suggests that her correct job title was Developmental Assistant II. Pl. Ex. 10.

facility. And once in the garage retrieving the vehicle I entered in and I was called the N word by a one, Sally Rogers. And there were like four other people in there with her, and myself, all Caucasian.

One of them told her, you can't say those kind of words on the facility, don't do that. And she began to use profanity and said, I can say whatever it is that I want to say whenever I want to say it, how I want to say it. And like I said, F that N word.[3]

Def. Ex. C at 11.

Plaintiff filed a Complaint against BHC in Case No. 4:05CV1966 alleging that BHC violated Title VII because a Caucasian co-worker used a racial slur directed at Plaintiff, and that, to Plaintiff's knowledge, Defendant took no action after Plaintiff reported the incident to her supervisors. Case No. 4:05CV1966, Doc. 29 at 1. In the Complaint in Case No. 4:05CV1966 Plaintiff alleged that on June 27, 2005, she filed a charge with the EEOC regarding the allegation of her Complaint.[4] Plaintiff attached a copy of the EEOC's Right to Sue letter which is dated September 19, 2005. BHC filed a motion to dismiss on the grounds that Plaintiff had failed to state a cause of action. The District Court granted BHC's motion to dismiss in Case No. 4:05CV1966 by decision dated June 7, 2006. Case No. 4:05CV1966, Doc. 29. Plaintiff did not appeal the District Court's decision in Case No. 4:05CV1966.

---

[3]    In its Statement of Undisputed Facts BHC states that on December 29, 2004, Plaintiff "overheard a co-worker [ ] to call another co-worker a racial slur." Def. Fact 2. Plaintiff's deposition testimony speaks for itself.

[4]    On or about May 24, 2005, Plaintiff filed a Questionnaire with the United States Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of the December 29, 2004, incident described above. In the Questionnaire Plaintiff described the alleged discrimination against BHC as "[s]exual[] assault on the job and [b]eing called a n----r." Plaintiff also stated that she complained to BHC of "sexual[] assault/harassment/racial discrimination" and that as a result of her complaint she was "kick[ed] of[f] of team and put into the hardest unit out there." Plaintiff further stated in the Questionnaire that she had "been fighting to keep [her] job for 5 years. They still constantly write me up." Def. Ex. D.

An Employee Progressive Disciplinary Record ("Disciplinary Record") dated April 11, 2005, states that Plaintiff "called in stating [that she was] going to be late and did not show." This Disciplinary Record further states that Plaintiff "failed to obtain approval for an absence"; that she had an unscheduled absence for [a] major portion of a work day (over 4 hours)"; and that Plaintiff was receiving a written reprimand. Def. Ex. B at 7. On or about April 13, 2005, Plaintiff received a reprimand for absenteeism.[5]

On or about June 5, 2005, Plaintiff requested leave from September 1, 2005, to November 23, 2005, under the Family and Medical Leave Act ("FMLA") for the birth of her child. Plaintiff was found eligible for the requested leave and was informed by BHC that she was required to furnish medical certification of a serious medical condition by June 18, 2005. Plaintiff did not provide BHC with the required medical certification until September 9, 2005. On September 12, 2005, Plaintiff was approved for FMLA leave from September 1 through November 23, 2005.[6] Pl. Ex. 6. The medical

---

[5]    Plaintiff has submitted as Exhibit B three typewritten letters addressed to her from Clementine Chambers, BHC's "FMLA and WC Coordinator," addressed to Plaintiff. These letters each state that Plaintiff had been absent "3 or more days." These letters further inform Plaintiff that her "illness may qualify [her] for Family and Medical Leave," which is "job protection," and that she should provide BHC with a certificate to be completed by her doctor so that BHC could determine whether Plaintiff's illness qualified her for "Family and Medical Leave." In two of these letters the addressee's name, the date of sending, and the date by which the addressee was required to provide a doctor's certification are erased. Plaintiff's name, the date of sending, August 11, 2005, and the date upon which a doctor's certification was required, August 18, 2005, is handwritten over the erased items. Additionally, there are editorial handwritten notes on each of these two letters, some of which appear to be in ink and some of which appear to be in pencil. The third letter is dated February 14, 2005, and informed Plaintiff that she was required to provide a doctor's certification by February 21, 2005. The handwritten words "authentic copy" appear on the third letter which is completely typewritten with the exception of the signature of Ms. Chambers.

[6]    In the matter under consideration, Plaintiff alleged a violation of the FMLA which this court dismissed on the grounds of Eleventh Amendment immunity. The dismissal was upheld by the Eighth Circuit. See Miles v. Bellefontaine Habilitation Center, 481 F.3d 1106 (8th Cir.

certification states that as of August 23, 2005, Plaintiff was required to be on "bedrest for the remainder of her pregnancy due to increased blood pressure and headaches." Pl. Ex. 3. The medical certification was signed by a doctor on August 29, 2005.

BHC's attendance tracking sheet reflects that Plaintiff was marked AWOL on August 16, August 18 through August 21, August 24 through August 28, August 31 through September 3, and September 6 and September 7, 2005.[7] Def. Ex. B at 22. The attendance tracking sheet further reflects that Plaintiff was not scheduled to work August 14, 15, 29, and 30, 2005 or September 4 and 5, 2005. A Department of Mental Health Time and Attendance - Input Record reflects that on August 23-27 and 30-31, 2005, Plaintiff was marked as AWOL for eight hours on each day, respectively. Pl. Ex. 22.

Plaintiff's Exhibit 10, which is a letter from BHC to Plaintiff, dated December 30, 2004, states that Plaintiff's days off would be Sunday and Monday. BHC's attendance tracking sheet reflects that Plaintiff was not scheduled to work on Sundays and Mondays in April and May 2005, and on June 12 and 13, 2005, July 30 and August 1, 2005, August 14 and 15, which were Sundays and Mondays, respectively. Plaintiff contends that she was not scheduled to work on August 21 and 28, 2005, both Sundays, although the attendance tracking sheet indicates that she was AWOL on these dates. Plaintiff also contends that Defendant incorrectly suggests that she was not at work on August 23 and August 30, 2005; the attendance tracking sheet reflects that Plaintiff was not scheduled to work on

---

2007).

[7]    BHC's Statement of Undisputed Fact 12 states that Plaintiff was marked as AWOL and as "no call/no show" from August 18 through August 31, 2005. Def. Fact 12. This, however, conflicts with BHC's Exhibit B at 22, an attendance tracking sheet as described above. Also, BHC states that the attendance tracking sheet is for 2005, although the last digit is missing from the stated year. The court will assume that it is for 2005.

those days.[8] Nonetheless, it is undisputed that Plaintiff was absent without leave August 18 through August 20, 2005, August 24 through August 27, 2005, August 31 through September 3, 2005, and September 6 and 7, 2005; Plaintiff does not suggest that she called BHC to report that she was sick on any of these days although she suggests that because she called in sick on August 2, 2005, BHC was aware of her "condition."[9] Additionally, the attendance tracking sheet reflects that Plaintiff was "SLS"on August 4-6, 9-13, and 17, 2005.[10] According to the Time and Attendance - Input Record, SLS indicates an employee was on sick leave. Pl. Ex. 22.

BHC's attendance tracking sheet also states that Plaintiff received a written reprimand on April 11, 2005; that dismissal recommendations were made on August 16, 18, 19, and 20, 2005; and that Plaintiff had "32 hours" of "Sick leave Abuse." Def. Ex. B at 22.

BHC's Attendance Policy states, among other things, as follows that "[e]mployees must obtain prior written approval from their supervisors in order to use annual, compensatory, holiday, or administrative leave" and that "[a]pproval/denial of leave must be documented on a DMH-13A." BHC's Attendance Policy further states that "[e]mployees will receive disciplinary action for: (a) Failure to call-in as directed and/or notify their supervisors of their absence" and for "(b) Failure to

---

[8]      Plaintiff contends that her Exhibits 13 and 14 will prove the "major discrepancies" she alleges in regard BHC's Statement of Undisputed Facts. Doc. 51 at 2-3. Plaintiff's Exhibit 13 is BHC's August 2005 attendance tracking sheet which is also Defendant's Exhibit B at 22. Plaintiff's Exhibit 14 is a calendar for August 2005 upon which the numbers 21 and 28 are underlined. For purposes of summary judgment only the court will assume, as suggested by Plaintiff, Plaintiff was not scheduled to work on August 21 and 28, 2008, and that she was at work on August 23 and August 30, 2005.

[9]      BHC was aware that Plaintiff was pregnant no later than June 5, 2005, the date upon which Plaintiff requested maternity leave commencing in September 2005.

[10]      Plaintiff states that she was marked SLS on August 2, 2005, although the tracking sheet is blurred in this regard.

obtain prior approval for an absence." Further, BHC's Attendance Policy states that "supervisors will initiate disciplinary action for excessive absenteeism in accordance with procedural steps"; that "[e]mployees must have additional absence after one disciplinary step is initiated before the next action is taken"; that on the first occasion of an excessive absence an employee will receive a "Written Reprimand"; that on the second occasion of an excessive absence an employee will receive an "Unacceptable Conduct Notice"; that on the third occasion of an excessive absence an employee will be dismissed; that "Employees absent without authorization or without leave for three consecutive days or more will be subject to dismissal"; that the "current or last 12-month period serves as a time frame for disciplinary purposes"; and that the "12-month time frame is a floating 12-month period." Def. Ex. B at 24.

As a result of her excessive absences without leave, Plaintiff's supervisor decided on September 14, 2005, to terminate Plaintiff's employment.[11] BHC's Assistant Superintendent, Rebecca Post, concurred with this decision on this same date. BHC's Superintendent, Bernard Simon, concurred on September 15, 2005. Def. Ex. B at 25.

As stated above, on September 19, 2005, the EEOC issued a Right to Sue letter and notified Plaintiff and BHC of its dismissal of Plaintiff's June 27, 2005 charge regarding an alleged racial slur on the grounds that it was unable to establish a violation of federal law. [12]

---

[11]    BHC's Statement of Undisputed Facts, Fact 16 states that the decision to terminate Plaintiff was made on September 14, 2007. The court assumes that is a typographical error considering the evidence of record including BHC's Exhibit B at 25 which is the Personnel Action Review/Recommendation in which Plaintiff's supervisor recommended her termination. This document is dated September 14, 2005, and signed September 15, 2005.

[12]    Defendant's Exhibit D reflects that the Right to Sue letter was mailed by the EEOC on September 19, 2005.

By letter dated September 30, 2005, BHC notified Plaintiff of its decision to terminate her.

The letter stated, in relevant part:

> For the reasons listed herein, you are hereby dismissed from your employment as a Developmental Assistant I at Bellefontaine Habilitation Center, effective October 10, 2005, close of business. This action is being taken subject to your right to show reasons why this action should not be effected. You may schedule an appointment to take place on or before October 7, 2005 ... .
>
> The specific reason for your dismissal is your failure to report to work. Bellefontaine Habilitation Center Policy Number P-3, Section 3 states: "Employees who are absent without authorization for three (3) consecutive days or more will be subject to dismissal". You have not reported to work since August 18, 2005. Your attendance record has caused undue hardship for your fellow co-workers and the individuals you are assigned to support. Thus, your dismissal is required in the interest of efficient administration and the good of the service.
>
> If you consider this dismissal improper, you have the right to appeal ... . The appeal must: (1) be in writing; (2) set forth in substance the basis for the appeal; (3) be addressed to the Missouri Personnel Advisory Board within thirty (30) calendar days of the effective date of the dismissal, and (4) be addressed to the Missouri Personnel Advisory Board, P.O. Box 388, Jefferson City, MO 65102. A copy of the "Application for Appeal to the Personnel Advisory Board" is enclosed.

Def. Ex. B at 26.

Plaintiff never appealed her termination from employment with BHC pursuant to the procedure described in the dismissal letter.

Subsequent to her discharge Plaintiff filed a charge with the EEOC on about October 17, 2005, alleging that BHC discharged her in retaliation for her filing the prior charge with the EEOC. On January 13, 2006, the EEOC issued a Right to Sue letter in regard to Plaintiff's second charge.[13]

Pl. Ex. 19-2.

---

[13] This second Right to Sue letter does not include a case number but based on its date the court and based on Plaintiff's other exhibits the court assumes that the Right to Sue letter issued in January 2006 addressed Plaintiff's charge of retaliatory discharge.

In her Complaint in the matter under consideration Plaintiff alleges that BHC retaliated against her because she filed a charge with the EEOC; that BHC discriminated against her on the basis of her race; and that BHC's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3. In its Motion for Summary Judgment BHC alleges that it is entitled to summary judgment because it has demonstrated a legitimate, non-retaliatory reason for Plaintiff's termination in that she failed to report to work for ten consecutive scheduled work days in violation of BHC's stated policy.[14]

## STANDARD FOR SUMMARY JUDGMENT

The court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. See also Fenny v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (holding that an issue is genuine "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party").

A moving party always bears the burden of informing the court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must

---

[14]    This court previously ordered BHC to address three issues in a motion for summary judgment: (1) exhaustion of remedies; (2) timeliness of the EEOC charge; and (3) the merits of Plaintiff's retaliation claim. BHC states that it does not believe that summary judgment would lie based on exhaustion or timeliness grounds. Doc. 47 at 2 n.1.

set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256.

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in its favor. Id. at 255; Raschick v. Prudent Supply, Inc., 830 F.2d 1497, 1499 (8th Cir. 1987). The court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id.4at 248. With these principles in mind, the court turns to an analysis of Defendant's motion.

## LEGAL FRAMEWORK

In order to establish a prima facie case of retaliation in violation of Title VII, a plaintiff must demonstrate that: (1) she engaged in conduct protected by Title VII; (2) the employer engaged in or took a materially adverse action; and (3) a causal connection existed between the discharge and the adverse action. Burlington N. & Santa Fe Ry. Co v. White, 126 S.Ct. 2405, 2409, 2415(2006); Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). It order to be considered "materially adverse," an employer's action must dissuade a reasonable employee from engaging in protected activity. Burlington, 126 S.Ct. at 2409. It is well established that filing a complaint with, or complaining to, the EEOC is considered protected conduct under Title VII. See Burlington, 126 S.Ct. at 2415 (citing Robinson, 519 U.S. at 346).

When a plaintiff is unable to put forth direct evidence of an unlawful employment action under

Title VII, the Eighth Circuit applies the burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2006); Buettner v. Arch Coal Sales Co., 216 F.3d 707, 713 (8th Cir. 2000); Breeding v. Arthur J. Gallagher and Co, 164 F.3d 1151, 1156 (8th Cir. 1999). Direct evidence is evidence which shows "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" a plaintiff's termination. Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997).

Under the burden-shifting framework, a plaintiff filing a complaint pursuant to Title VII must first present evidence that will establish a prima facie case. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1119 (8th Cir. 2006); Buettner, 216 F.3d at 713; Breeding, 164 F.3d at 1156; McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir. 1998) (citations omitted). "The plaintiff's burden at the prima facie case stage of the analysis is not onerous, and '[a] minimal evidentiary showing will satisfy this burden of production.'" Wallace, 442 F.3d at 1119 (citing Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 850 (8th Cir.2005) (quoting Pope v. ESA Serv., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005)).

If the plaintiff is successful in establishing a prima facie case, a rebuttable presumption of unlawful conduct arises. See id. at 1126; Hill v. St. Louis Univ., 123 F.3d 1114, 1119 (8th Cir. 1997). The burden then shifts to the employer, who must articulate a nondiscriminatory reason for the adverse employment action. McCullough, 140 F.3d at 1126. Once the employer articulates a nondiscriminatory reason, the presumption of discrimination disappears entirely. The plaintiff must then show that she has sufficient admissible evidence from which a rational trier of fact could find that

the employer's proffered nondiscriminatory reason is either untrue or was not the real reason for the action and that intentional discrimination was the real reason. McCullough, 140 F.3d at 1127; Hill, 123 F.3d at 1119.

In regard to an employer's mistaken but lawful reason for terminating an employee, the Eighth Circuit held in Johnson v. A.T.& T. Corp., 422 F.3d 756, 763 (8th Cir. 2005), that even if an employer is mistaken in its belief that an employee violated company policy, "any such mistake does not automatically prove that [the employer] was instead motivated by unlawful discrimination"; "the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee"; the employee is also required to show that the circumstances permit a reasonable inference to be drawn that the real reason [the employer] terminated [the employee] was" based on a reason violative of Title VII. See also Benson v. Little Rock Hilton Inn, 742 F.2d 414, 418 (8th Cir. 1984) (holding that to allege unlawful discrimination an employee must establish that her employer had an unlawful motive; it does not matter if the employer's reason for termination was a mistaken but lawful belief; "[w]hether rightly or wrongly, [the employer] fired [the plaintiff] because he believed in good faith that she had falsely libeled the hotel, had lied to him, and had stolen the document."). "'[A]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification.'" Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (quoting Smith v. Allen Health Sys., Inc, 302 F.3d 827, 834 (8th Cir. 2002) (internal marks omitted).

At all times, the plaintiff retains the ultimate burden of persuasion to show that the adverse employment action was a result of intentional, unlawful discrimination. Kobrin v. University of

<u>Minnesota</u>, 121 F.3d 408, 413-14 (8th Cir. 1997); <u>Rothmeier v. Inv. Advisers, Inc</u>., 85 F.3d 1328, 1336-37 (8th Cir. 1996). Therefore, to succeed against a motion for summary judgment, a plaintiff must present evidence of intentional discrimination by the employer to create a genuine issue of fact for trial. <u>See</u> <u>Rothmeier</u>, 85 F.3d at 1337.

### DISCUSSION

Plaintiff alleges that she was terminated because she filed a charge with the EEOC. She further alleges that the decision to terminate her was not made until after the Right to Sue letter was issued by the EEOC. First, it is undisputed that Plaintiff filed a charge with the EEOC on about June 27, 2005. Plaintiff's filing this charge with the EEOC is protected conduct pursuant to Title VII. <u>See</u> <u>Burlington</u>, 126 S.Ct. at 2415; <u>Robinson</u>, 519 U.S. at 346. Second, BHC engaged in a material adverse action as Plaintiff was terminated. <u>See</u> <u>Burlington</u>, 126 S.Ct. at 2409. Pursuant to <u>Burlington</u>, 126 S.Ct. at 2415, Plaintiff must also show that there is a causal connection between her filing the charge with the EEOC and her termination. <u>See</u> <u>Burlington</u>, 126 S.Ct. at 2415. As such, she must demonstrate that BHC was retaliating against her for filing a charge with the EEOC when it terminated her. Plaintiff has not presented any direct evidence of a specific link between her filing a charge with the EEOC and her challenged termination. <u>See</u> <u>Thomas</u>, 111 F.3d at 66. Because she has not presented any direct evidence of unlawful discrimination, the burden shifting analysis of <u>McDonnell Douglas</u>, 411 U.S. at 802, is applicable to establish whether "an illegitimate criterion actually motivated" Plaintiff's termination. <u>See</u> <u>Thomas</u>, 111 F.3d at 66.

The timing of an adverse employment action may be relevant to determining whether the motive for the act was unlawful retaliation. <u>See</u> <u>Kipp v. Missouri Highway Transp. Com'n</u>, 280 F.3d 893, 897 (8th Cir. 2002); <u>Sherman v. Runyon</u>, 235 F.3d 406, 410 (8th Cir. 2000) ("The timing of a

12

plaintiff's discharge in relation to his protected activity can sometimes establish causation for the purpose of establishing a prima facie case.").   "[T]iming on its own, [however,] is usually not sufficient to show that an employer's non-discriminatory reason for discharge is merely pretext." Id. (citing Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 272 (8th Cir.1996)). The timing of an employment action must be "evaluated in light of other evidence, or lack of other evidence, in the record." Id. (citing Nelson v. J.C. Penney Co., Inc., 75 F.3d 343, 346 (8th Cir.1996)).  See also Curd v. Hank's Discount Fine Furniture, Inc., 272 F.3d 1039, 1042 (8th Cir. 2001).

Plaintiff filed a charge with the EEOC on June 27, 2005, but she was not discharged by BHC until about September 30, 2005. This gap in time between Plaintiff's protected activity and her discharge is not indicative of an unlawful motive on the part of BHC upon discharging Plaintiff. See Stewart v. Indep. School Dist. No. 196, 481 F3d 1034, 1044 (8th Cir. 2007) ("'[A] gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive,' Hesse v. Avis Rent A Car Sys., Inc., 394 F.3d 624, 633 (8th Cir.2005), and [], given a delay of sufficient length, the 'causal nexus tends to evaporate.' Shanklin v. Fitzgerald, 397 F.3d 596, 604 (8th Cir.2005)."). See also  Fyfe v. City of Fort Wayne, 241 F.3d 597, 603 (7th Cir. 2001) ("In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct.") (citing Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (holding that four months was insufficient); Juarez v. Ameritech Mobile Commc'ns, Inc., 957 F.2d 317, 321 (7th Cir.1992) (holding that six months was insufficient).

Plaintiff was notified of the decision to terminate her approximately five days after the Right to Sue letter issued. To the extent that Plaintiff suggests that temporal proximity is established by her being discharged within several days of BHC's receiving the Right to Sue letter, the undisputed facts

establish that the initial recommendation to terminate Plaintiff was made on September 14, 2005; this date is prior to the EEOC's issuing the Right to Sue letter. Further, the undisputed facts establish that recommendations to discharge Plaintiff were made on August 16, 18, 19, and 20, 2005, which dates are likewise prior to the issuance of the Right to Sue letter. As such, the temporal proximity of BHC's receipt of the Right to Sue letter or of the issuance of this letter to Plaintiff's discharge is not suggestive of a retaliatory motive on the part of BHC. Moreover, as stated above, the timing of Plaintiff's discharge must be evaluated in light of other evidence. See Curd, 272 F.3d at 1042; Sherman, 235 F.3d at 410.

Plaintiff argues in her Response that BHC was "aware of [her] condition" as of August 2, 2005. Doc. 51 at 2. Defendant's mere awareness that Plaintiff was ill and/or pregnant does not provide the nexus between her filing a charge with the EEOC and her discharge. See Burlington, 126 S.Ct. at 2415; Robinson, 519 U.S. at 346. To the extent that Plaintiff suggests that she had "protected status" in August 2005 because she was ill and/or pregnant, Plaintiff was not on FMLA leave until September 1, 2005, nor is there any evidence that she requested FMLA leave to be effective prior to September 1, 2005.[15]

Even assuming for purposes of summary judgment only that BHC marked Plaintiff as being AWOL although it was aware that Plaintiff was sick or unable to work due to pregnancy, such a mistaken belief does not establish intentional, unlawful discrimination. See Johnson, 422 F.3d at 763; Benson, 742 F.2d at 418. Plaintiff has failed to submit *any* evidence to suggest that BHC's asserted reason for terminating her was not the real reason and that the real reason was that she filed a charge

---

[15]     As stated above she did not provide the required medical authorization form until September 9, 2005, although BHC backdated her FMLA to September 1, 2005, the date she originally requested for her leave to commence.

with the EEOC. See Johnson, 422 F.3d at 763;  Logan, 416 F.3d at 881; Benson, 742 F.2d at 418. Moreover, merely establishing that Plaintiff was unable to work due to illness or pregnancy on the dates she was marked as AWOL does not meet Plaintiff's burden to establish that she was terminated as a result of intentional, unlawful discrimination.  See  Kobrin, 121 F.3d at 413-14; Rothmeier, 85 F.3d at 1336-37.  Most significantly, assuming that Plaintiff was unable to work after August 23, 2005, due to illness and/or pregnancy, it is undisputed that she did not call BHC to report that she was unable to work as required by BHC's attendance policy.

It is undisputed that BHC has an attendance policy which provides that employees who fail to call or otherwise notify their supervisors of an absence will be disciplined; that BHC's attendance policy provides that after a third violation employees are subject to dismissal; that after being absent without authorization or leave for three consecutive days an employee is subject to dismissal; that Plaintiff failed to report to work for at least three consecutive days in August 2005 and that she did not call to report that she was unable to work due to illness or pregnancy on these dates; and that, as such, Plaintiff was subject to discharge under BHC's attendance policy.  The court finds, therefore, that BHC has articulated a nondiscriminatory reason for terminating Plaintiff; that Plaintiff has not submitted any evidence from which a rational trier of fact could find that BHC's proffered nondiscriminatory reason for discharging Plaintiff is either untrue or was not the real reason Plaintiff was terminated; that BHC has met its burden under McDonnell Douglas, 411 U.S. at 802, to show that it lawfully terminated Plaintiff; that there are no genuine issues of material fact; and that Plaintiff has not established a prima facie case of retaliation in violation Title VII.  See Celotex, 477 U.S. at 322; McCullough, 140 F.3d at 1126-27;  Kobrin, 121 F.3d at 413-14; Hill, 123 F.3d at 1119; Rothmeier, 85 F.3d at 1337.  As such the court finds that the undisputed facts establish that BHC did

not discharge Plaintiff in violation of Title VII and that, therefore, summary judgment should be granted in favor of BHC.

## CONCLUSION

The court finds for the reasons set forth above that there is no genuine issue of material fact and that summary judgment should be granted in favor of BHC.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant Bellefontaine Habilitation Center is **GRANTED**; Doc. 45

**IT IS FURTHER ORDERED** that a separate judgment shall issue incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 10th day of December, 2007.